CLOSED

# U.S. District Court
## SOUTHERN DISTRICT OF TEXAS (Houston)
## CRIMINAL DOCKET FOR CASE #: <u>4:21−mj−02651</u> All Defendants
## *SEALED*
### *Internal Use Only*

---

Case title: USA v. SEALED

Date Filed: 12/10/2021
Date Terminated: 12/20/2021

---

Assigned to: Magistrate Judge
Christina A Bryan

**Defendant (1)**

| | | |
|---|---|---|
| **George Jr. Willard**<br>*TERMINATED: 12/20/2021* | represented by | **Robert Eric Reed**<br>The Reed Law Firm PLLC<br>912 Prairie<br>Ste 100<br>Houston, TX 77002<br>713−600−1800<br>Fax: 713−600−1840<br>Email: <u>ereed@reedlawpllc.com</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| 18:2: Conspiracy to Commit Health Care Fraud | |

1

**Plaintiff**

**USA**

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 12/10/2021 | | | Judge update in case as to George Jr. Willard. Magistrate Judge Christina A Bryan added. (RebeccaBecknal, 4) (Entered: 12/10/2021) |
| 12/10/2021 | 1 | 4 | Copy of Sealed Indictment from District of New Jersey as to George Jr. Willard, filed.(RebeccaBecknal, 4) (Entered: 12/10/2021) |
| 12/10/2021 | | | Arrest of George Jr. Willard, filed. (RebeccaBecknal, 4) (Entered: 12/10/2021) |
| 12/10/2021 | | | ***Set/Reset Hearings as to George Jr. Willard : Initial Appearance set for 12/10/2021 at 02:00 PM in Courtroom 701 before Magistrate Judge Christina A Bryan (RebeccaBecknal, 4) (Entered: 12/10/2021) |
| 12/10/2021 | | | Arrest of George Jr. Willard. (MelissaMorgan, 4) (Entered: 12/10/2021) |
| 12/10/2021 | | | INITIAL APPEARANCE Minute Entry for proceedings held on 12/10/2021 before Magistrate Judge Christina A Bryan as to George Jr. Willard, Defendant first appearance on Indictment. (Deft informed of rights). Defendant appeared with counsel. Bond set, $100,000 Unsecured, Defendant advised of conditions of release, Defendant waives Identity and Waiver of Rule 5 & 5.1 Hearings executed,. Appearances: AUSA Edward Gallagher f/USA Eric Reed f/ dft.(ERO:Yes) (Interpreter: No) (Pretrial Officer: Callie Derrick) filed.(MelissaMorgan, 4) Modified on 12/10/2021 (MelissaMorganadi, 4). (Entered: 12/10/2021) |
| 12/10/2021 | 2 | 22 | BRADY ORDER on Rule 5(f) as to George Jr. Willard. (Signed by Magistrate Judge Christina A Bryan) Parties notified. (MelissaMorgan, 4) (Entered: 12/10/2021) |
| 12/10/2021 | 3 | 23 | WAIVER of Rule 5 & 5.1 Hearings by George Jr. Willard, filed.(MelissaMorgan, 4) (Entered: 12/10/2021) |
| 12/10/2021 | 4 | 24 | Appearance Unsecured Bond Entered as to George Jr. Willard in amount of $ $100,000,, filed. (MelissaMorganadi, 4) Modified on 12/10/2021 (MelissaMorganadi, 4). (Main Document 4 replaced on 12/10/2021) (MelissaMorganadi, 4). (Entered: 12/10/2021) |
| 12/10/2021 | 5 | 26 | ORDER Setting Conditions of Release as to George Jr. Willard. George Jr. Willard (1) Unsecured $100,000 ( Signed by Magistrate Judge Christina A Bryan) (Attachments: # 1 Unredacted attachment) Parties notified. (MelissaMorganadi, 4) (Entered: 12/10/2021) |
| 12/10/2021 | 7 | 43 | ORDER for Defendant to Appear in the District Where Charges Are Pending and Transferring Bail as to George Jr. Willard. The clerk is ordered to transfer any bail deposited in the registry of this court to the clerk of the court where the charges are pending. Charging District: District of New Jersey. ( Signed by Magistrate Judge Christina A Bryan) Parties notified. (MelissaMorgan, 4) (Entered: 12/20/2021) |
| 12/16/2021 | 6 | 38 | |

| | | | Pretrial Services Report (Sealed) as to George Jr. Willard, filed. (Entered: 12/16/2021) |

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order

SMS/ES/2019R00603

United States Courts
Southern District of Texas
FILED

*December 10, 2021*

Nathan Ochsner, Clerk of Court

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. **4:21-mj-2651** |
| | : | |
| v. | : | Criminal No. 21- |
| | : | |
| DAVID WOROBOFF, | : | 18 U.S.C. § 2 |
| GEORGE WILLARD, | : | 18 U.S.C. § 371 |
| RANDALL MILLS, and | : | 18 U.S.C. § 1349 |
| LE THU | : | |

## I N D I C T M E N T

The Grand Jury for the District of New Jersey charges:

### COUNT ONE
### (Conspiracy to Commit Health Care Fraud)

1.      Unless otherwise indicated, at all times relevant to this Indictment:

### Relevant Individuals and Entities

        a.      Defendant David Woroboff ("defendant WOROBOFF") was a resident of California.  Defendant WOROBOFF was the Chief Executive Officer of a telemedicine company incorporated under the laws of Nevada (the "Telemedicine Company").

        b.      Defendant George Willard ("defendant WILLARD") was a resident of Michigan and the Chief Operating Officer of the Telemedicine Company.

        c.      Defendant Randall Mills ("defendant MILLS") was a resident of Texas and an employee of the Telemedicine Company.

4

d.      Defendant Le Thu ("defendant THU") was a medical doctor and a resident of Massachusetts. From in or around 2014 through in or around 2019, defendant THU worked as a health care provider ("HCP") for the Telemedicine Company.

e.      Physician-1, a co-conspirator not charged in this Indictment, was a physician licensed to practice in New Jersey who worked as an HCP for the Telemedicine Company.

### Compounding

f.      In general, "compounding" was a practice in which a licensed pharmacist, or a licensed physician, combined, mixed, or altered ingredients of a drug to create a medication tailored to the needs of an individual patient. Pharmacies engaged in the practice of compounding were referred to as "compounding pharmacies."

g.      Compounded drugs were not approved by the Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs. Generally, compounded drugs were prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the substance that triggered the allergic reaction. Compounded drugs also could be prescribed when a patient could not consume a medication by traditional means,

such as an elderly patient or child who could not swallow an FDA-approved pill and needed the drug in a liquid form that was not otherwise available.

**The Medicare Program**

h.    Medicare was a federally-funded program established to provide medical insurance benefits for individuals age 65 and older and certain disabled individuals who qualified under the Social Security Act. Individuals who received benefits under Medicare are referred to as "Medicare beneficiaries."

i.    Medicare was administered by the Center for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.

j.    Medicare was divided into four parts, which helped cover specific services: Part A (hospital insurance), Part B (medical insurance), Part C (Medicare Advantage), and Part D (prescription drug coverage).

k.    Medicare Part B covered non-institutional care that included physician services and supplies, such as durable medical equipment ("DME"), that were needed to diagnose or treat medical conditions and that met accepted standards of medical practice.  Medicare Part D covered prescription drugs, including certain compounded medications.

l.    Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b), and a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce.

m.    Medicare would not reimburse claims for services that it knew were procured through kickbacks or bribes. Such claims were deemed false and

3

6

fraudulent because they violated Medicare laws, regulations, and program instructions, and violated federal criminal law. For example, where a DME order or a compound prescription was procured through the payment of a kickback in violation of the federal Anti-Kickback Statute ("AKS"), a claim to Medicare for reimbursement for that order was fraudulent. Medicare also would not reimburse claims unless those claims were for medically necessary services. By implementing these restrictions, Medicare aimed to preserve its resources, which were largely funded by United States taxpayers, for those elderly and other qualifying beneficiaries who had a genuine need for medical services.

**TRICARE**

n.     TRICARE was a health care program of the United States Department of Defense ("DoD") Military Health System that provided coverage for DoD beneficiaries worldwide, including active-duty service members, National Guard and Reserve members, retirees, their families, and survivors. The Defense Health Agency, an agency of the DoD, was the military entity responsible for overseeing and administering the TRICARE program.

o.     TRICARE was a "health care benefit program," as defined by 18 U.S.C. § 24(b), and a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce.

p.     TRICARE-authorized suppliers of health care services could only submit claims to TRICARE for medically necessary services. TRICARE would not reimburse claims for services that it knew were procured through kickbacks or bribes. Such claims were deemed false and fraudulent because they violated

4

7

TRICARE laws, regulations, and program instructions, and violated federal criminal law. For example, where a DME order or a compounded prescription was procured through the payment of a kickback in violation of the AKS, a claim to TRICARE for reimbursement for that order was fraudulent. By implementing these restrictions, TRICARE aimed to preserve its resources, which were largely funded by United States taxpayers, for those qualifying beneficiaries who had a genuine need for medical services.

### The Conspiracy

2.     From in or around May 2014 through in or around April 2017, in the District of New Jersey, and elsewhere, defendants

**DAVID WOROBOFF,**
**GEORGE WILLARD,**
**RANDALL MILLS, and**
**LE THU**

did knowingly and intentionally conspire and agree with others to knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money or property owned by, and under the custody and control of, a health care benefit program, as defined by 18 U.S.C. § 24(b), in connection with the delivery of or payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

## Goal of the Conspiracy

3.      The goal of the conspiracy was for the defendants and their co-conspirators to unlawfully enrich themselves and others by causing the submission of false and fraudulent claims to health care benefit programs.

## Manner and Means of the Conspiracy

4.      It was part of the conspiracy that:

a.      Prior to in or about May 2014, the Telemedicine Company's business model was for the company's registered nurses to first speak with beneficiaries and assess their conditions. Thereafter, physicians associated with the Telemedicine Company would speak with the beneficiaries to treat them and prescribe medications as the physicians deemed medically necessary and appropriate for each particular beneficiary. Prescriptions, if appropriate, would be sent to pharmacies as directed by the beneficiaries.

b.      In or around May 2014, defendant WOROBOFF, defendant WILLARD, defendant MILLS, and their co-conspirators began to operate a separate business model focused on compounded medications, and later, DME. This side of the Telemedicine Company's business was designed to generate a high volume of prescriptions for compounded medications and DME. As part of this scheme, defendant WOROBOFF, defendant WILLARD, defendant MILLS, defendant THU, and their co-conspirators arranged for the Telemedicine

6

Company to generate prescriptions for compounds and DME without regard to medical necessity and through the payment of kickbacks.

c.    In or around May 2014, defendant WOROBOFF, defendant WILLARD, defendant MILLS, and their co-conspirators began to communicate with individuals who identified beneficiaries located in New Jersey and elsewhere through the use of marketing call centers under their direction (the "Marketers"). The Marketers sought to partner with a telemedicine company to generate prescriptions for compounded medications and DME ("Compound Orders" and "DME Orders," respectively), and then send the Compound Orders and DME Orders to particular compounding pharmacies and DME supply companies.

d.    In or around May 2014, defendant WOROBOFF, defendant WILLARD, and defendant MILLS arranged for the Telemedicine Company to generate Compound Orders in exchange for payment from the Marketers. Subsequently, beginning in or around August 2015, defendant WOROBOFF and defendant WILLARD also arranged for the Telemedicine Company to generate DME Orders in exchange for payment from the Marketers.

e.    The Marketers provided beneficiaries' medical information directly to the Telemedicine Company. Thereafter, Telemedicine Company contractors based in the Philippines reviewed the beneficiary information. While the Telemedicine Company referred to these contractors as "nurses" when corresponding with HCPs, they were not U.S. registered nurses and generally did not communicate with the beneficiaries. After the contractors had reviewed the

beneficiary information, each beneficiary was assigned to an HCP associated with the Telemedicine Company for a "consult."

  f. Defendant WOROBOFF, defendant WILLARD, defendant MILLS, and their co-conspirators knew that the "nurses" located in the Philippines were not U.S. registered nurses. Defendant WOROBOFF, defendant WILLARD, defendant MILLS, and their co-conspirators also knew that HCPs did not speak with beneficiaries in conjunction with prescribing compounded medication and DME. In fact, defendant WOROBOFF and defendant MILLS falsely informed HCPs that "nurses" had already consulted with the beneficiaries, taken their medical histories, and determined that compounded medication or DME was medically appropriate for the beneficiaries.

  g. For example, on or about September 10, 2014, Physician-1 emailed defendant MILLS that he was interested in prescribing compounds and was licensed in New Jersey, among other states. Defendant MILLS responded by falsely informing Physician-1 that a "nurse triages the patient and provides you a details [sic] medical history and allergies on the patient. Most [] doctors have sufficient information to write the scripts without talking to the patient but talking to the patient is always an option." Physician-1 ultimately wrote prescriptions for the Telemedicine Company for beneficiaries located in New Jersey.

  h. To induce HCPs to write prescriptions without regard for medical necessity, defendant WOROBOFF, defendant WILLARD, and defendant MILLS agreed to pay certain HCPs kickbacks for each compounding prescription.

For example, defendant THU, defendant WOROBOFF, defendant WILLARD, and defendant MILLS agreed that the Telemedicine Company would pay defendant THU $35 for each compounding prescription. Defendant THU thereafter generated Compound Orders without speaking to the beneficiaries and in exchange for these kickback payments.

i.   Despite the admonitions from representatives of the Telemedicine Company that the HCPs did not need to speak with beneficiaries, some HCPs still endeavored to do so. In order to assure that the HCPs generated Compound Orders and DME Orders for the Marketers—without regard for whether such orders were medically necessary—defendant WOROBOFF, defendant WILLARD, defendant MILLS, and their co-conspirators steered consults away from those HCPs who sought to speak with patients, and toward those they knew did not speak with patients. To formalize this process, the Telemedicine Company maintained an internal chart of HCPs for the contractors to utilize when assigning consults that had a column labeled "Speak to Px [Patient]." The chart indicated that only a few HCPs always spoke to patients, and contractors were encouraged to rely on those HCPs that did not speak to patients.

j.   Similarly, to ensure that the Telemedicine Company generated Compound Orders and DME Orders without regard to medical necessity, defendant WOROBOFF, defendant WILLARD, defendant MILLS, and their co-

9

conspirators agreed that the Telemedicine Company would not send consults to HCPs who had significant rates of denying prescriptions.

k.     To generate as many Compound Orders and DME Orders as possible and increase the payments that they received from the Marketers, defendant WOROBOFF, defendant WILLARD, and their co-conspirators agreed to send consults to HCPs who were not licensed in the states in which the beneficiaries were located, in violation of certain state telemedicine laws.

l.     In some states, pharmacists were suspicious of prescriptions written by out-of-state HCPs or by HCPs located far from the pharmacy. To conceal the true locations of the HCPs from pharmacists, defendant WOROBOFF, defendant WILLARD, and their co-conspirators set up local mailing addresses for the Telemedicine Company to use on prescriptions in those states.

m.     Similarly, in order to further conceal the location of the HCPs and give the misimpression that the prescriptions had been written by HCPs close to the patients, the Telemedicine Company established multiple phone numbers that were local to the pharmacies. For example, on or about May 8, 2015, defendant WILLARD sent an email to defendant WOROBOFF and others noting that a new phone number with a northern California area code "MUST go on all scripts" and asking defendant WOROBOFF whether they should "get a . . . number that is a las vegas area code?" In another email dated March 31, 2015, an employee of the Telemedicine Company explained to defendant WILLARD that the "the local numbers in each state" would be funneled to a common phone number called the "TMI Pharmacy Line," which would be staffed by employees of

the Telemedicine Company. In other words, while the pharmacists would believe that they were calling an HCP at a local number, in reality, Telemedicine Company employees located in the Philippines would be responding to the inquiries.

n.    In order to generate increased Compound and DME Orders, the defendants failed to comply with state and federal telemedicine rules requiring video consultations. For example, on or about May 21, 2014, defendant WILLARD was advised in an email from a Marketer that "face to face" communications were "now required by Florida." On or about May 21, 2014, defendant WILLARD responded that "Video will be coming on-line in the next 60 days." Nonetheless, the Telemedicine Company did not begin to utilize video technology until at the earliest in or around 2017, even though it continued to issue Compound and DME Orders for beneficiaries in Florida.

o.    The fraudulent Compound Orders that defendant WOROBOFF, defendant WILLARD, defendant MILLS, and defendant THU caused the Telemedicine Company to generate, and the fraudulent DME orders that defendant WOROBOFF and defendant WILLARD caused the Telemedicine Company to generate, were subsequently billed to federal and private health care benefit programs. The fraudulent Compound and DME Orders generated by the Telemedicine Company resulted in losses to TRICARE and other federal and private health care benefit programs of at least approximately $37 million.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
### (Conspiracy to Violate the Federal Anti-Kickback Statute)

1.     The allegations in Paragraphs 1 and 3 to 4 of Count 1 of this Indictment are realleged here.

2.     From in or around May 2014 through in or around April 2017, in the District of New Jersey, and elsewhere, defendants

**DAVID WOROBOFF,**
**GEORGE WILLARD,**
**RANDALL MILLS, and**
**LE THU**

did knowingly and intentionally conspire and agree with each other and others to commit an offense against the United States, that is to knowingly and willfully offer and pay remuneration, including any kickback, bribe, and rebate, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, namely Medicare and TRICARE, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A).

### Goal of the Conspiracy

3.     The goal of the conspiracy was for the defendants and others to unlawfully enrich themselves by exchanging bribes for Compound Orders.

### Manner and Means of the Conspiracy

4.     It was part of the conspiracy that:

a.     Beginning in or around May 2014, defendant WOROBOFF, defendant WILLARD, defendant MILLS, and their co-conspirators agreed to enter

12

into agreements with HCPs whereby the HCPs would provide Compound Orders in exchange for kickback payments, including defendant THU and Physician-1.

b. From at least as early as in or around July 2014, defendant WOROBOFF, defendant WILLARD, and defendant MILLS agreed with defendant THU that the Telemedicine Company would pay her kickbacks of approximately $35 for each compound prescription.

c. Defendant THU thereafter generated Compound Orders for TRICARE beneficiaries and others without speaking to the beneficiaries and in exchange for kickback payments.

d. From at least as early as September 2014, defendant WOROBOFF, defendant WILLARD, defendant MILLS, and their co-conspirators agreed with Physician-1 that the Telemedicine Company would pay Physician-1 a kickback payment of $25 for each compound prescription.

e. As a result of this scheme, TRICARE paid at least approximately $110,000 in reimbursements for Compound Orders generated through the payment of kickbacks.

## **Overt Acts**

5. In furtherance of the conspiracy, and in order to effect the goal thereof, the defendants and others committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

a. On or about October 17, 2014, Physician-1, located in New Jersey, received a kickback payment of approximately $1,395 from the

Telemedicine Company, in exchange for which Physician-1 provided approximately 55 Compound Orders to the Telemedicine Company.

b.      On or about November 12, 2014, defendant THU received a kickback payment of approximately $8,325 from the Telemedicine Company, in exchange for which defendant THU provided approximately 239 Compound Orders to the Telemedicine Company.

c.      On or about November 17, 2014, Physician-1, located in New Jersey, received a kickback payment of approximately $2,300 from the Telemedicine Company, in exchange for which Physician-1 provided approximately 92 Compound Orders to the Telemedicine Company.

d.      On or about January 20, 2015, defendant THU received a kickback payment of approximately $8,810 from the Telemedicine Company, in exchange for which defendant THU provided approximately 252 Compound Orders to the Telemedicine Company.

e.      On or about February 18, 2015, defendant WOROBOFF, defendant WILLARD, and another individual received an email from an employee of the Telemedicine Company. The email attached an excel spreadsheet calculating both the legitimate compensation earned by each HCP and, separately, the kickbacks earned by HCPs as a result of generating prescriptions. The calculation for defendant THU provided that defendant THU had earned kickbacks in the amount of approximately $5,565 for approximately 159 "Consultations (Scripts)" issued to approximately 87 patients. The

14

spreadsheet noted that this portion of defendant THU's compensation was based on payments of "$35 per script."

       f.    On or about February 18, 2015, defendant THU received a kickback payment of approximately $5,565 from the Telemedicine Company in exchange for which defendant THU provided approximately 159 Compound Orders to the Telemedicine Company.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION AS TO ALL COUNTS

1.      Upon conviction of one or more of the Federal health care offenses, as defined in 18 U.S.C. § 24, alleged in Counts 1 and 2 of this Indictment, the defendants charged in each respective count shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real or personal, obtained by the defendants charged in each respective count that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offenses charged in Counts 1 and 2 of this Indictment.

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

2.      If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with-, a third person;

      (c)    has been placed beyond the jurisdiction of the Court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

A TRUE BILL

RACHAEL A. HONIG
Acting United States Attorney

17

Case 4:21-mj-02651 *SEALED*   Document 1   Filed 12/10/21   Page 18 of 18

CASE NUMBER: 21

# United States District Court
## District of New Jersey

## UNITED STATES OF AMERICA

v.

## DAVID WOROBOFF,
## GEORGE WILLARD, JR.,
## RANDALL MILLS, and
## LE THU

# INDICTMENT FOR
18 U.S.C. §§ 371, 1349, and 2

A True Bill,



RACHAEL A. HONIG
ACTING UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

SEAN M. SHERMAN
EMMA SPIRO
ASSISTANT U.S. ATTORNEYS
973-645-2733
973-645-2746

United States District Court
Southern District of Texas
**ENTERED**
December 10, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | Case No. 4:21−mj−02651 *SEALED* |
| | § | |
| George Jr. Willard | § | |

### ORDER

In accordance with Federal Rule of Criminal Procedure 5(f), as amended by the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (Oct. 21, 2020), the Government is **ORDERED** to comply with the prosecutor's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The Government is also notified of the potential consequences of violating this Order and the disclosure obligations. The consequences include, but are not limited to, sanctions such as delaying trial or other proceedings, excluding evidence, giving adverse jury instructions, granting a new trial, dismissing the case, or finding the Government in contempt.

It is so **ORDERED**.

**SIGNED** on December 10, 2021.


Christina A. Bryan
United States Magistrate Judge

AO 466A (Rev. 01/09)  Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the
Southern District of Texas

| | | |
|---|---|---|
| United States of America | ) | Case No. 21-MJ-2651 |
| v. | ) | |
| George Willard, Jr. | ) | Charging District's Case No. |
| _Defendant_ | ) | |

### WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*

District of New Jersey .

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing within 10 days of my first appearance if I am in custody and 20 days otherwise —
unless I am indicted — to determine whether there is probable cause to believe that an offense has
been committed;

(5)     a hearing on any motion by the government for detention;

(6)     request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☒     an identity hearing and production of the warrant.

☐     a preliminary hearing.

☐     a detention hearing.

☐     a preliminary or detention hearing to which I may be entitled in this district, and production of the
warrant.  I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are
pending against me.

Date: 12/10/21

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Eric Reed

_____
*Printed name of defendant's attorney*

23



AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT

### for the

Southern District of Texas

| United States of America | ) |
|---|---|
| v. | ) |
| Tamar Wisner | ) Case No. 4:21cr349 |
| *Defendant* | ) |
| | ) |

## APPEARANCE BOND

### Defendant's Agreement

I, **Tamar Wisner** *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( ☒ ) to appear for court proceedings;

( ☒ ) if convicted, to surrender to serve a sentence that the court may impose; or

( ☒ ) to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( ☐ ) (1)   This is a personal recognizance bond.

( ☒ ) (2)   This is an unsecured bond of $ **100,000** .

( ☐ ) (3)   This is a secured bond of $ _____ , secured by:

( ☐ ) (a) $ _____ , in cash deposited with the court.

( ☐ ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)*:

_____

If this bond is secured by real property, documents to protect the secured interest may be filed of record.

( ☐ ) (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

_____
_____

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.



AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

## Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

(1) all owners of the property securing this appearance bond are included on the bond;
(2) the property is not subject to claims, except as described above; and
(3) I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C.§ 1746.)

Date: 12/9/21

_____
*Defendant's signature*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

CLERK OF COURT

Date: December 09, 2021

_____
*Signature of Clerk or Deputy Clerk*

Approved.

Date: _____ December 09, 2021

_____
*Judge's signature*

(Rev. 12/08)

**ENTERED**
December 10, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT                SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| | § |
| vs. | § |
| | § |
| George Willard | § |
| | § |

CRIMINAL NO. H-_ 4:21mj2651

# ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to the following conditions:

1.  The defendant must not violate any federal, state or local law while on release.

2.  The defendant must not intimidate or attempt to intimidate a witness, juror or officer of the court (18 USC § 1503), obstruct a criminal investigation (18 USC § 1510), or tamper with or retaliate against a witness, victim or informant (18 USC §§ 1512 and 1513).

3.  The defendant must immediately advise the Court, defense counsel and the Pretrial Services Agency, in writing, before any change in address and telephone number.

4.  The defendant must appear in court as required and must surrender to serve any sentence imposed. The defendant must appear at (if blank, to be notified):

    _____Houston_____ on
    Place                                        Date/Time

### RELEASE ON PERSONAL RECOGNIZANCE OR UNSECURED BOND

IT IS FURTHER ORDERED that the defendant be released on condition that:

[X]     5.     The defendant promises to appear in court as required and surrender to serve any sentence imposed.

[X]     6.     The defendant executes an unsecured bond binding the defendant to pay the United States the sum of $ 100,000.00 in the event of a failure to appear as required or to surrender to serve any sentence imposed.

        [ ]     The bond shall be signed by the following person(s) as surety:

        _____

        _____

        _____

# Additional Conditions of Release

Upon finding that release by one of the above methods will not by itself reasonably assure the defendant's appearance and the safety of other persons or the community, it FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

[ ]      7.      The defendant is placed in the custody of:

_____
(Name of person or organization)

_____
(Address)

_____
(City/State/Zip Code)           (Area Code/Telephone Number)

who agrees (a) to supervise the defendant in accordance with all conditions of release, (b) to use every effort to assure the defendant's appearance at all scheduled court proceedings, and (c) to notify the court immediately if the defendant violates any conditions of release or disappears.

Signed:___ x _____ x _____
Custodian or Proxy           Date

[X]      8.      The defendant must:

    [X]      a.      Report to the **U. S. Pretrial Services Agency - Phone: 713-250-5218**, on a regular basis.
.

    [ ]      b.      Execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property:

_____
_____

    [ ]      c.      Post with the court the following proof of ownership of the designated property, or the following amount or percentage of the above-described sum

_____.

    [ ]      d.      Execute a bail bond with solvent sureties in the amount of $ _____.

    [X]      e.      Maintain or actively seek full- time verifiable employment. *No working in medical compounding industry. No work in tele medicine.*

    [ ]      f.      Maintain or commence an education program.

    [X]      g.      Surrender U.S. Passport and/or Foreign Passport to the U.S. Pretrial Services Agency. *in SDTX*

    [X]      h.      Obtain no passport.

2

[x]      i.    Abide by the following restrictions on personal association, place of abode, or travel:

          [ ]      Harris and the bordering counties:
          [X]     Continental United States; or
          [ ]      SDTX and travel Outside travel to be preapproved by US Probation.

[X]      j.    Avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or prosecution, including but not limited to: __co-defendants__ Do not speak about case unless atty is present.

[ ]      k.    Submit to a mental health evaluation and/or participate in a mental health treatment program as directed by US Probation Office. The defendant will incur the costs associated with any services related to treatment, based on the ability to pay as determined by US Probation.

          _____

          _____

[ ]      l.    Return to custody each (week) day at _____ o'clock after being released each (week) day at _____ o'clock for employment, schooling, or the following purpose(s):

          _____

          _____

          _____

[ ]      m.    Maintain residence at a halfway house or community corrections center, as the Pretrial Services Office or supervising officer considers necessary.

[X]      n.    Refrain from possessing a firearm, destructive device, or other dangerous weapons.
          *Only possess those in RV. Once in Michigan - remove them from home and RV.*

[ x ]      o.    Refrain from ( ) any [X] excessive use of alcohol.

[x ]      p.    Refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner. Do not use or consume any CBD products.

[ ]      q.    Submit to any testing required by the Pretrial Services Office or the supervising officer to determine whether the defendant is using a prohibited substance. Any testing may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or monitoring which is (are) required as a condition of release.

[]      r.    Participate in a program of inpatient or outpatient substance abuse therapy and counseling if the Pretrial Services Office or supervising officer considers it advisable.

[ ]    s.    Participate in one of the following location monitoring program components and abide by its requirement as the Pretrial Services Office or supervising officer instructs.

    [ ]    (i)    **Curfew**. You are restricted to your residence every day ( ) from _____ to _____, or ( ) as directed by the Pretrial Services Office or supervising officer; or

    [ ]    (ii)    **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the Pretrial Services Office or supervising officer; or

    [ ]    (iii)    **Home Incarceration.** You are restricted to your residence at all times except for medical needs or treatment, and court appearances pre-approved by the Pretrial Services Office or supervising officer.

[ ]    t.    Submit to the location monitoring indicated below and abide by all of the program requirements and instructions provided by the Pretrial Services Office or supervising officer related to the proper operation of the technology.

    [ ]    The defendant must pay all or part of the cost of the program based upon your ability to pay as the Pretrial Services Office or supervising officer determines.

    [ ]    (i)    Location monitoring technology as directed by the Pretrial Services Office or supervising officer; STAND ALONE MONITORING

    [ ]    (ii)    Radio Frequency (RF) monitoring;

    [ ]    (iii)    Passive Global Positioning Satellite (GPS) monitoring;

    [ ]    (iv)    Active Global Positioning Satellite (GPS) monitoring (including "hybrid" (Active/Passive) GPS);

    [ ]    (v)    Voice Recognition monitoring.

[X]    u.    Immediately report contact with law enforcement to Pretrial Services.

[x ]    v.    Special Conditions:

    The defendant will incur the costs associated with any services related to drug testing and treatment based on the ability to pay as determined by U.S. Probation.

4

# Advice of Penalties and Sanctions

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 USC § 3148, and a prosecution for contempt as provided in 18 USC § 401 which could result in a possible term of imprisonment or fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony, or to a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself. 18 USC § 3147.

18 USC § 1503 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 USC § 1510 makes it a criminal offense punishable by up to five years imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 USC § 1512 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 USC § 1513 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten or attempt to do so.

It is a criminal offense under 18 USC § 3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sending, surrender for the service of a sentence, or appeal or certiorari after conviction for:

[ ]  1.  an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

[ ]  2.  an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

[ ]  3.  any other felony, the defendant shall be fined not more than $250,000 or imprisoned for not more than two years, or both;

[ ]  4.  a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned for not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted.

5

# Acknowledgment of Defendant

I acknowledge ... release. I promise to obey al ... y sentence imposed. I am aw ...

## Direction to United States Marshal

[  ]    The defendant is ORDERED released after processing.

[  ]    The United States Marshal is ORDERED to keep the defendant in custody until notified by the clerk or
judicial officer that the defendant has posted bond and complied with all other conditions for release.   The
defendant shall be produced before the appropriate judicial officer at the time and place specified, if still
in custody.

Date: December 10, 2021

Christina Bryan
United States Magistrate Judge

6

31

(Rev. 12/08)

UNITED STATES DISTRICT COURT                SOUTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA            §
                                    §
                                    §
vs.                                 §     CRIMINAL NO. H-_ 4:21mj2651
                                    §
George Willard                      §
                                    §
                                    §

# **ORDER SETTING CONDITIONS OF RELEASE**

IT IS ORDERED that the defendant's release is subject to the following conditions:

1.    The defendant must not violate any federal, state or local law while on release.

2.    The defendant must not intimidate or attempt to intimidate a witness, juror or officer of the court (18 USC § 1503), obstruct a criminal investigation (18 USC § 1510), or tamper with or retaliate against a witness, victim or informant (18 USC §§ 1512 and 1513).

3.    The defendant must immediately advise the Court, defense counsel and the Pretrial Services Agency, in writing, before any change in address and telephone number.

4.    The defendant must appear in court as required and must surrender to serve any sentence imposed. The defendant must appear at (if blank, to be notified):

_____Houston_____ on
          Place                              Date/Time

### **RELEASE ON PERSONAL RECOGNIZANCE OR UNSECURED BOND**

IT IS FURTHER ORDERED that the defendant be released on condition that:

[X]    5.    The defendant promises to appear in court as required and surrender to serve any sentence imposed.

[X]    6.    The defendant executes an unsecured bond binding the defendant to pay the United States the sum of $ 100,000.00 in the event of a failure to appear as required or to surrender to serve any sentence imposed.

       [ ]    The bond shall be signed by the following person(s) as surety:

_____

_____

_____

# Additional Conditions of Release

Upon finding that release by one of the above methods will not by itself reasonably assure the defendant's appearance and the safety of other persons or the community, it FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

[  ]       7.      The defendant is placed in the custody of:

_____

(Name of person or organization)

_____

(Address)

_____

(City/State/Zip Code)                 (Area Code/Telephone Number)

who agrees (a) to supervise the defendant in accordance with all conditions of release, (b) to use every effort to assure the defendant's appearance at all scheduled court proceedings, and (c) to notify the court immediately if the defendant violates any conditions of release or disappears.

Signed:___ x _____ x _____

                           Custodian or Proxy                  Date

[X]       8.      The defendant must:

     [X]      a.      Report to the **U. S. Pretrial Services Agency - Phone: 713-250-5218**, on a regular basis.
.

     [  ]      b.      Execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property:

         _____

     [  ]      c.      Post with the court the following proof of ownership of the designated property, or the following amount or percentage of the above-described sum
         _____ .

     [  ]      d.      Execute a bail bond with solvent sureties in the amount of $
         _____ .

     [X]      e.      Maintain or actively seek full- time verifiable employment. *No working in medical compounding industry. No work in tele medicine.*

     [  ]      f.      Maintain or commence an education program.

     [X]      g.      Surrender U.S. Passport and/or Foreign Passport to the U.S. Pretrial Services Agency . *in SDTX*

     [X]      h.      Obtain no passport.

[x]  i.  Abide by the following restrictions on personal association, place of abode, or travel:
- [ ]  Harris and the bordering counties:
- [X]  Continental United States; or
- [ ]  SDTX and travel Outside travel to be preapproved by US Probation.

[X]  j.  Avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or prosecution, including but not limited to: __co-defendants__ Do not speak about case unless atty is present.

[ ]  k.  Submit to a mental health evaluation and/or participate in a mental health treatment program as directed by US Probation Office. The defendant will incur the costs associated with any services related to treatment, based on the ability to pay as determined by US Probation.

_____
_____

[ ]  l.  Return to custody each (week) day at _____ o'clock after being released each (week) day at _____ o'clock for employment, schooling, or the following purpose(s):

_____
_____
_____

[ ]  m.  Maintain residence at a halfway house or community corrections center, as the Pretrial Services Office or supervising officer considers necessary.

[X]  n.  Refrain from possessing a firearm, destructive device, or other dangerous weapons. Only possess those in RV. Once in Michigan - remove them from home and RV.

[x]  o.  Refrain from ( ) any [X] excessive use of alcohol.

[x]  p.  Refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner. Do not use or consume any CBD products.

[ ]  q.  Submit to any testing required by the Pretrial Services Office or the supervising officer to determine whether the defendant is using a prohibited substance. Any testing may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or monitoring which is (are) required as a condition of release.

[ ]  r.  Participate in a program of inpatient or outpatient substance abuse therapy and counseling if the Pretrial Services Office or supervising officer considers it advisable.

[ ]    s.    Participate in one of the following location monitoring program components and abide by its requirement as the Pretrial Services Office or supervising officer instructs.

    [ ]    (i)    **Curfew**. You are restricted to your residence every day ( )
from _____ to _____, or ( ) as directed by the
Pretrial Services Office or supervising officer; or

    [ ]    (ii)    **Home Detention.** You are restricted to your residence at all times
except for employment; education; religious services; medical, substance
abuse or mental health treatment; attorney visits; court appearances; court-
ordered obligations; or other activities pre-approved by the Pretrial Services
Office or supervising officer; or

    [ ]    (iii)    **Home Incarceration.** You are restricted to your residence at all
times except for medical needs or treatment, and court appearances pre-
approved by the Pretrial Services Office or supervising officer.

[ ]    t.    Submit to the location monitoring indicated below and abide by all of the program requirements and instructions provided by the Pretrial Services Office or supervising officer related to the proper operation of the technology.

    [ ]    The defendant must pay all or part of the cost of the program based upon your ability to pay as the Pretrial Services Office or supervising officer determines.

    [ ]    (i)    Location monitoring technology as directed by the Pretrial Services
Office or supervising officer; STAND ALONE MONITORING

    [ ]    (ii)    Radio Frequency (RF) monitoring;

    [ ]    (iii)    Passive Global Positioning Satellite (GPS) monitoring;

    [ ]    (iv)    Active Global Positioning Satellite (GPS) monitoring (including
"hybrid" (Active/Passive) GPS);

    [ ]    (v)    Voice Recognition monitoring.

[X]    u.    Immediately report contact with law enforcement to Pretrial Services.

[x ]    v.    Special Conditions:

The defendant will incur the costs associated with any services related to drug testing and treatment based on the ability to pay as determined by U.S. Probation.

4

# Advice of Penalties and Sanctions

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 USC § 3148, and a prosecution for contempt as provided in 18 USC § 401 which could result in a possible term of imprisonment or fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony, or to a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself. 18 USC § 3147.

18 USC § 1503 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 USC § 1510 makes it a criminal offense punishable by up to five years imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 USC § 1512 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 USC § 1513 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten or attempt to do so.

It is a criminal offense under 18 USC § 3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sending, surrender for the service of a sentence, or appeal or certiorari after conviction for:

[ ]      1.    an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

[ ]      2.    an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

[ ]      3.    any other felony, the defendant shall be fined not more than $250,000 or imprisoned for not more than two years, or both;

[ ]      4.    a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned for not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted.

5

# Acknowledgment of Defendant

I acknowledge that I am the defendant in this case, and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Signature of Defendant

9000 Waterman Rd.
_____
Address

Brooklyn MI 49230
_____
City/State/Zip Code

248-915-0151
_____
Telephone Number

# Direction to United States Marshal

[  ]   The defendant is ORDERED released after processing.

[  ]   The United States Marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and complied with all other conditions for release. The defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date:   December 10, 2021          _____
                                                         Christina Bryan
                                                  United States Magistrate Judge

6

37

PS3

# PRETRIAL REPORT

*According to Judiciary Policy, several factors fall solely within the province of the judicial officer, and are not to be considered by the officer. These factors include: the weight of the evidence, the rebuttable presumption, and potential penalty.*

| District/Office<br>**SOUTHERN DISTRICT OF TEXAS**-Houston | Charge(s) (Title, Section, and Description)<br><br>18 U.S.C. § 1349<br>Conspiracy to Commit Health Care Fraud |
|---|---|
| Judicial Officer<br>United States Magistrate Judge Christina Bryan | |
| Docket Number (Year-Sequence No.-Deft. No.)<br>4:21-mj-02651-1<br><br>**Rule 5** - District Of New Jersey | 18 U.S.C. § 371<br>Conspiracy to Violate the Federal Anti-Kickback Statute |

## DEFENDANT

| Name | Willard, George Jr. | Employer<br>24/7 Call-A-Doc | | |
|---|---|---|---|---|
| Address: | 11000 Waterman Rd.<br>Brooklyn, Michigan 49230 | Employer Address<br>11000 Waterman Rd.<br>Brooklyn, Michigan 49230, | | |
| Time at Address<br>1/2/2020 | Time in Community<br>lifetime | Monthly Income<br>$12,000 | Time Unemployed | |

The defendant is scheduled to appear before the U.S. Magistrate Judge Christina Bryan for an initial appearance on December 10, 2021. On the same date, the defendant was interviewed at the U.S. Marshals without the presence of defense attorney.

## DEFENDANT HISTORY

1. **DEFENDANT HISTORY/RESIDENCE/FAMILY TIES:**

The defendant, age 53, advised he was born in Farmington, Michigan and has been a lifetime resident of the State of Michigan aside from travel with the Marine Corps. The defendant reported at the age of 17 he joined the Marines and served from 1986 through 1990. The defendant reported having an Honorable Discharge from the Marines. He advised he was court-martialed once during his time in the Marines, but no disciplinary action was taken. **He reported living in a three-bedroom, three-bathroom home with his wife and if released on bond plans to reside at this address. The defendant stated he owns three pistols, one shotgun, and approximately four to five AR-15's. He advised the guns can be removed from his home**. The defendant stated his mother, father, step siblings and half siblings all reside in Michigan, except for one stepsister that resides in North Carolina. The defendant advised he speaks to his father daily and mother weekly. He remains in contact with all of his half and step siblings monthly aside from his half brother with whom he has no contact with.

Willard, George

The defendant stated he has been married to his current wife for the past 10 years and they have been together a total of 15 years. He stated they have no children together. The defendant stated he has two children from a previous marriage, a son and daughter, ages 24 and 32 respectively. He reported having daily contact with his children who both live in Michigan. The defendant stated he was married to his children's mother from 1987 until 2006.

The defendant stated he graduated from Roosevelt High School in Wyandotte, Michigan and subsequently joined the Marine Corps. The defendant stated he was initially a combat engineer and ended his career in the Marine Corps as a sniper. He stated earning a Good Conduct Medal, a Navy achievement Medal, and received letters of accommodations from all four branches of the military during his time as a Marine. He advised in 1998 he graduated from the University of Phoenix with a bachelor's degree in business administration. He reported in 2000 he graduated from the University of Phoenix with a master's degree in organizational management.

**The defendant reported owning a valid U.S. Passport**, and advised his wife is in possession of it. He reported travel to various countries for vacation purposes, such as Italy and all-inclusive resorts in Mexico, with his last travel outside the United States to St. Martins, St. Thomas and The Bahamas on a Royal Caribbean Cruise that returned two weeks ago. The defendant stated he has traveled to other places for purpose of vacation but could not list all of the countries visited. The defendant stated he has traveled to the Philippines for work purposes approximately two-three years ago. He reported while in the Marines he traveled to Japan, Korea and the Philippines. The defendant stated pre COVID-19 he would travel with his wife to Canada approximately monthly to visit her family. He stated they last visited Canada in October 2021 for Canadian Thanksgiving. Currently, the defendant and his wife are traveling in their RV and staying at Live Oak Resort in Washington County, Texas. He advised they have been there since Monday, December 6, 2021 and have plans to travel to other RV Parks.

**The defendant's wife, Monique Willard, verified the defendant's residential history, familial ties, education, and travel history. The defendant's wife, Monique Willard, advised she is in possession of the defendant's passport and verified their current RV travel plans. The defendant's wife, Monique Willard, stated they have scheduled a flight out of Houston, Texas on December 23, 2021 to return to Michigan for Christmas. It was indicated the RV will remain in Texas and they will return to Houston, Texas on December 29, 2021 to get the RV and continue to Florida. The defendant's wife advised they have prepaid to stay at Calusa Cove RV Park in Fort Meyers, Florida from January 3, 2022- January 31, 2022 and then at Yacht Haven RV Park in Fort Lauderdale, Florida from January 31, 2022- February 28, 2022. Mrs. Willard stated they would then return to Michigan. The defendant's wife, Monique Willard, also advised the defendant's attorney is located in Miami, Florida and the defendant will be meeting with him to review his case.**

2. **EMPLOYMENT HISTORY / FINANCIAL RESOURCES:**

**Employed/Unemployed History:**
The defendant advised he is employed with 24/7 Call-A-Doc as the Chief Operating Officer and has been in this position since 2014. He reported prior to this employment he worked for Call MD for approximately two years and Ranger Data Technology for five to six years holding the same title as Chief Operating Officer of these companies. The defendant advised he and his wife bought North Haven RV Resort in Brooklyn, Michigan. He advised his wife works at the RV resort and at this time the business is not bring in any income.

Willard, George

**Finances:**
The defendant reported the following financial information.

| Assets | Amount | Liabilities | Amount |
|---|---|---|---|
| Personal Checking Account | $2,000.00 | Business- North Haven RV Resort | $7,500.00 |
| Personal Savings Account | $2,000.00 | | |
| Business- North Haven RV Resort | $1,500,000.00 | | |
| Vehicle- 2018 Porsche Cayenne | $40,000.00 | | |
| Residence | $225,000.00 | | |
| | | | |
| **Total** | $1,769,000 | **Total** | $7,500 |
| **Estimated Net Worth: $1,761,500** | | | |

| Monthly Income | Amount | Expenses | Amount |
|---|---|---|---|
| Salary | $12,000.00 | Auto Insurance | $400.00 |
| | | Cellular Phone | $350.00 |
| | | Credit Card Payments | $1,000.00 |
| | | Utilities | $500.00 |
| | | Groceries and Supplies | $300.00 |
| | | Vehicle lease- 2018 F-150 | $700.00 |
| | | | |
| **Total** | $12,000 | **Total** | $3,250 |
| **Estimated Monthly Cash Flow: $8,750** | | | |

**The defendant's wife, Monique Willard, verified the defendant's employment history and financial information**.

3. **HEALTH:**

**Physical Health:**
The defendant stated he is in good physical health with no medical problems reported. He advised he does take medication for maintenance for blood pressure, cholesterol and thyroid.

**Mental Health:**
The defendant reported no current or past history of mental health disorders.

Willard, George

**Substance Abuse:**

The defendant denied any history of substance abuse issues. He indicated drinking sporadically and denied use of all illicit drugs during his lifetime.

**The defendant's wife, Monique Willard, verified the defendant's physical health, mental health, and substance abuse history.**

4. **PRIOR RECORD:**

The defendant reported no criminal history. A criminal record check conducted through the National Crime Information Center (NCIC), state, and local records revealed no criminal history for the defendant.

5. **ASSESSMENT OF NONAPPEARANCE:**

**There are no known factors indicating the defendant poses a risk of nonappearance.**

6. **ASSESSMENT OF DANGER:**

**There are no known factors indicating the defendant poses a risk of danger to the community.**

7. **RECOMMENDATION**

*According to Judiciary Policy, several factors fall solely within the province of the judicial officer, and are not to be considered by the officer. These factors include: the weight of the evidence, the rebuttable presumption, and potential penalty.*

**CONDITIONS OF RELEASE**

The following bond and conditions are recommended to address the issues of nonappearance and danger to the community:

1.    $100,000 Unsecured Bond

2.    Pretrial Services Supervision.

3.    Maintain or actively seek verifiable full-time employment.

4.    Obtain no passport / **Surrender passport within 24 hours of release**.

5.    Travel restricted to Continental United States.

6.    Avoid all contact with co-defendant, victims or potential victims.

7.    Refrain from possessing a firearm, destructive device, or other dangerous weapons. **Remove firearms from the home prior to returning.**

Willard, George

8.    Refrain from excessive use of alcohol.

9.    Refrain from use or unlawful possession of a narcotic drug or other controlled substance unless prescribed by a licensed medical practitioner.

10.    Report Contact with Law Enforcement.

| United States Probation Officer<br>Callie DERRICK *Callie Derrick* 281-254-2677 | Date/Time<br>12/10/2021; 1:24pm |
|---|---|
| Supervising United States Probation Officer<br>Elizabeth MARTINEZ | Date/Time<br>12-10-21 at1:37 pm |

United States District Court
Southern District of Texas
**ENTERED**
December 20, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | Case No. 4:21−mj−02651 *SEALED* |
| | § | Charging District: |
| | § | District of New Jersey |
| George Jr. Willard | § | |

**ORDER REQUIRING DEFENDANT TO APPEAR IN THE DISTRICT
WHERE CHARGES ARE PENDING AND TRANSFERRING BAIL**

After a hearing in this court, the defendant is released from custody and ordered to appear in District of New Jersey, the district court where the charges are pending, to answer those charges. If the time to appear in that court has not yet been set, the defendant must appear when notified to do so. Otherwise, the time and place to appear in that court are:

| Place: | Location: |
|---|---|
| District of New Jersey | Date and Time: |

The clerk is ordered to transfer any bail deposited in the registry of this court to the clerk of the court where the charges are pending.

Date: 12/10/2021

Christina A. Bryan
United States Magistrate Judge